# AMERICAN REFRIGERATOR TRANSIT CO. *v.* STATE TAX COMMISSION

430

Roy F. Shields, Portland, tried the case for plaintiff. On the briefs were Roy F. Shields, and Maguire, Shields, Morrison, Bailey & Kester, Portland.

Alfred B. Thomas, Assistant Attorney General, Salem, tried the case for defendant. On the brief were Robert Y. Thornton, Attorney General, Alfred B. Thomas, Assistant Attorney General, and Theodore W. de Looze, Assistant Attorney General, Salem.

Decision for plaintiff rendered September 26, 1963.

PETER M. GUNNAR, Judge.

This is a suit for refund of corporate income taxes for the calendar years 1955 through 1960. The commission assessed the taxes, interest, and penalties upon its estimate of income and affirmed this assessment in its Opinion and Order numbered I-62-25, which the plaintiff seeks to have set aside in this proceeding.

The facts of this case are stipulated. The plaintiff, American Refrigerator Transit Company (hereinafter referred to as "ART"), a New Jersey corporation, has its principal place of business in St. Louis, Missouri. It is not qualified to do business in Oregon, maintains no office here, has no employees here, solicits no business here, and has no direct contractual arrangements with any railroad which operates in Oregon.

ART owns refrigerated railroad cars which it leases to operating railroads. It is not a public carrier, it issues no bills of lading, it has no dealings with shippers, and it publishes no tariffs of rates for ship-

pers. ART's sole activity in the transportation field is to rent railroad refrigerator cars to operating railroads for their use in performing their own transportation service for their own shippers under their own tariffs and shipping documents.

ART has no rental agreements with railroads operating in Oregon. However, under the interchange procedures applicable to railroads today, some of its cars are interchanged onto railroads operating in Oregon and thereby do travel to, into, and through Oregon. Under its rental contracts and the interchange rules, a railroad using an ART car pays a fixed rate per mile of its use. Monthly, each using railroad reports to ART the mileage traveled by each car used by it. These reports and the rental payments are sent directly to St. Louis. Light or running repairs on ART cars are made by the using railroad, and some such repairs are made in Oregon by railroads serving this state which have the use of cars under interchange arrangements with ART's lessees. All other repairs are made outside of Oregon.

ART cars are delivered to the contracting railroads at certain junction points, none of which is in Oregon, and thereafter, until the cars are returned to ART at a junction point, ART has no control over their routing, movement, interchange or other use. The cars are used as are any other cars of the using railroad.

ART files with the commission all required property tax reports and pays Oregon property tax upon its cars in Oregon as a centrally assessed utility pursuant to ORS 308.505 *et seq*.

In 1956, following the passage of the Corporation Income Tax Act of 1955, the commission requested ART to file corporate income tax returns and pay

the tax. ART declined to comply on the ground that it was not subject to the act. In 1960, the commission determined and assessed the tax upon the best information available to it. Pursuant to this assessment, but under protest, for the alleged purpose of preventing the issuance of warrants and without admitting liability, ART filed its returns for the years 1955 through 1959 and paid the tax assessed. In 1961, it filed a return for 1960 and paid its tax. ART appealed to the commission for a refund of the taxes paid for each of the above-mentioned tax years and the refund was denied in the above-cited Opinion and Order No. I-62-25.

The ultimate issue in this case is whether there is sufficient nexus to sustain the tax.

The tax is imposed under ORS 318.020, which reads:

"(1) There hereby is imposed upon every corporation for each taxable year a tax at the rate of eight percent upon its net income derived from sources within this state after August 3, 1955, other than income for which the corporation is subject to the tax imposed by the Corporation Excise Tax Law of 1929 (ORS chapter 317) according to or measured by its net income. For tax years beginning on and after January 1, 1957, the tax rate shall be six percent.

"(2) Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."

This section, originally enacted in 1955, was amended in 1957 and 1961, but such amendments do not affect

the determination of this case. The foregoing quotation is the law as it exists today.

The plaintiff contends that this case also involves the issue of whether the commission has correctly interpreted the act. It is the commission's interpretation that the income received by the plaintiff in St. Louis for every mile that its cars travel in Oregon constitutes, within the definition of ORS 318.020, "income from tangible * * * property located or having a situs in this state" and therefore is "income derived from sources within this state."

 The Oregon Corporation Income Tax Act of 1955 was enacted to plug the hole left by the 1951 case of *Spector Motor Service, Inc. v. O'Connor,* 340 US 602, 71 S Ct 508, 95 L ed 573 (1951), which held that a state corporate excise tax was an unconstitutional restriction on interstate commerce under the commerce clause because it was a tax on the privilege of doing an interstate business. It is clear from the legislative and historical context of ORS chapter 318, as well as from its language, that its purpose was to impose a corporate tax measured by net income upon all corporations not subject to the corporation excise tax after the *Spector* decision, to the full extent permitted by the federal Constitution. To be a correct interpretation of the statute within the intent of the legislature, the commission's construction must be constitutional within the limitations upon state taxation of interstate commerce. Furthermore, to interpret the statute so that it exceeds the powers of the states to tax interstate commerce violates not only the legislative intent but also the rule that statutes shall be so interpreted as to preserve their constitutionality. *Peninsula Drainage District No. 2 v. City of Portland,*

212 Or 398, 320 P2d 277 (1958). Thus, constitutionality and proper statutory construction are really one issue, turning upon the application of constitutional limitations upon state taxation of interstate commerce.

▮ Under recent U. S. Supreme Court decisions, the question of constitutionality of a state tax measured by net income is sanctioned under the due process clause of the Constitution by the existence of sufficient nexus and under the commerce clause by the incidence of the tax falling upon net income from the transaction of interstate business within the state, even though all such income arises in interstate commerce, rather than upon the franchise to do such interstate business. *Northwestern States Portland Cement Co. v. Minnesota* and *Williams v. Stockham Valves and Fittings, Inc.,* 358 US 450, 79 S Ct 357, 3 L ed 2d 421, 67 ALR2d 1292 (1959) ; *Spector Motor Service, Inc. v. O'Connor, supra*; and cases therein cited. Since the tax imposed by ORS chapter 318 is not a tax upon the privilege of doing an interstate business in Oregon but rather is clearly a tax upon the net income earned from interstate business in Oregon, it is constitutional under the commerce clause. There remains only the due process issue, which turns on nexus, and therefore both the basic constitutional issue and the issue of proper statutory interpretation are issues of nexus.

▮▮ Whether sufficient nexus exists to support the constitutionality of an income tax is an issue of fact in each case. The legal mold into which the factual form must fit has been stated by the U. S. Supreme Court to be "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state." *Wisconsin v. J. C. Penney Co.,* 311 US 435, 444, 85 L ed 267, 270,

61 S Ct 246, 130 ALR 1229 (1940). This opinion is quoted at greater length in both *Northwestern States Portland Cement Co. v. Minnesota, supra,* and *U. S. Tobacco Co. v. Tax Com.,* 229 Or 627, 632, 368 P2d 337 (1962), and its statement of the due process criteria appears firmly established.

■ In view of the great volume of scholarly, judicial and nonjudicial writings upon the subject of due process and nexus, there is little to be gained from undertaking another analysis of the many cases which have considered the existence of sufficient connection to support state taxation of interstate commerce. Suffice it to say, in the sense of the opinion in *Northwestern States Portland Cement Co. v. Minnesota, supra,* that due process requires some activity which forms the sufficient " 'nexus between such tax and transactions within a state for which the tax is an exaction.' "

■ A review of the cases brings forth, from those cases in which sufficient nexus has been found, the presence of one salient and determinative feature which is not found in this case. In each of those cases finding sufficient nexus, there was, within the borders of the taxing state, a person or persons connected with, and engaged in business activities and transactions on behalf of, the proposed taxpayer. In the instant case there is no such person or activity in Oregon. Without such person acting on behalf of the taxpayer, doing within this state something in furtherance of the business of the taxpayer, there can be no "transaction" or "activity" of the plaintiff within this state for which our corporate income tax can be an exaction. Thus the required nexus between tax and transaction fails for want of one of the elements which due process requires.

■ In this case not only was there no activity of any person on behalf of the taxpayer, but such of its property as was in Oregon was here under the control of the interchange bailees of its lessees. The mere presence of ART's property here on January 1 subjects it to property tax, which it pays. However, liability for property tax does not create, *ipso facto,* liability for income tax.

The benefits conferred by the state in return for the property tax are not sufficient to support income tax liability.

"* * * The tax on each [on property and on income] is predicated upon different governmental benefits; the protection offered to the property in one state does not extend to the receipt and enjoyment of income from it in another." *New York ex rel Cohn v. Graves,* 300 US 308, 314, 57 S Ct 466, 81 L ed 666, 671, 108 ALR 721, 724 (1937).

Instead, the benefits assumed to accrue to the taxpayer in return for exaction of the *in rem* property tax, which arises as it does from the mere presence of property within the state, would appear to preclude mere presence of property within the state, without more, from being sufficient nexus for an *in personam* income tax predicated upon benefits conferred by the taxing state other than those for which the property tax is an exaction.

■ The benefit conferred by the state with respect to income taxation is not the same protection of the income-producing property for which the property tax is exacted, but rather is the protection of the receipt and enjoyment of income or the maintenance of conditions under which the acquisition of that income can be accomplished or materially furthered. Thus, the

sending of solicitors, sales engineers, and other personnel into a state to solicit or otherwise further the acquisition of income creates a sufficient nexus to render the income which they create or further by their activity taxable under proper allocation procedures, because the state protects these agents of the taxpayer and creates and maintains conditions under which an income-producing relationship can be established or fostered. But after the income-producing relationship has been established by the consummation of a lease and the transitory property which is the subject of the transaction has been delivered to the lessee, all outside of the taxing state, the mere receipt of income from the lease of that transitory personal property during the time that it is brought into the taxing state by the bailee of its lessee, in the course of the business of this bailee, under an arrangement for the interchange of railroad cars with the lessee, does not create that nexus upon which state income taxation of the nonresident lessor can be constitutionally based. There is nothing that this state does or provides which has a connection with that income as such and for which it can exact its tax, especially having already exacted its property tax for the protection of the plaintiff's income-producing property.

■ To this point nexus has been recognized as a due process concept, though in some writings at least it is considered applicable to the commerce clause debate also. *Spector, Northwestern States Portland Cement,* and the other pertinent cases apparently have laid the commerce clause question to rest; yet when dealing with state taxation of interstate commerce, it never can be ignored completely. If now the mere ownership of property which temporarily is within the

state and the receipt of income therefrom are to become the bases for income taxation, the procedures required for the administration of such tax would result in the re-erection of those very barriers to interstate commerce and the free flow of persons and chattels between the states which the commerce clause of the federal Constitution was intended to remove. Thus, a finding of the nexus required by due process upon the broad basis sought by the commission reopens the commerce clause question. To extend the concept of sufficient nexus for income taxation to the mere receipt of income from transitory chattels temporarily within the state upon the business of a bailee of the lessee of those chattels opens the door so wide that the now fairly settled commerce clause question and the whole problem of the constitutional limitation upon state taxation of interstate commerce is thrown back into the chaos from which it appears to be emerging.

■ As noted earlier, the legislature intended ORS chapter 318 to go to the outer limits permitted by the Constitution, and thus the constitutional and statutory issues are one. The proper meaning of the statutory language "located or having a situs within this state" must be determined by the constitutional limitations upon state taxation of interstate commerce and must be construed as meaning "having a situs for income taxation which meets the minimum constitutional requirements to support the tax." Any construction which permits taxation beyond this limit makes the statute unconstitutional in violation of both the legislative intent and the above-cited rule requiring a construction within constitutional requirements. *Peninsula Drainage District No. 2 v. City of Portland, supra.* Because sufficient nexus is essential for constitutionality, the situs required by the statute must

be construed to be that which establishes sufficient nexus to support the tax. For such nexus the cases require that there be some transaction or activity within the state, by persons acting on behalf of the proposed taxpayer, for which the income tax can be an exaction. The mere presence of plaintiff's leased, transitory, income-producing, personal property in Oregon on January 1 (or at other times) upon the business of a bailee of its lessee, while creating a liability for the payment of property tax, does not create by itself alone sufficient nexus in the income tax sense to subject its nonresident owner to the exaction of an income tax upon the rent received by the owner during its temporary presence in Oregon under a lease made and executed by delivery outside of Oregon.

In reaching this result, this court is in accord with cases in Georgia and Kentucky and in conflict with cases in Oklahoma and Arkansas. *Williams v. American Refrigerator Transit Co.,* 91 Ga App 522, 86 SE2d 336 (1955); *Kentucky Tax Commission v. American Refrigerator Transit Co.,* 294 SW2d 554 (Ky App 1956). *Oklahoma Tax Commission v. American Refrigerator Transit Co.,* 349 P2d 746 (Okla 1960); *Commissioner of Revenues v. Pacific Fruit Express Co.,* 227 Ark 8, 296 SW2d 676 (1957). The former are not particularly helpful in our factual and statutory situation and the latter are distinguishable on either the facts or the interpretation of local decisions. In the Arkansas case the court relied solely upon a prior decision with respect to the income taxation of a pipeline company having fixed personal and real property within the state and employes within the state. In the Oklahoma case, the court relied upon

property tax decisions and decisions where the ownership of fixed property, the maintenance of an office, and the keeping of employes within the state were of substantial significance. Because the presence and business activity of employes is recognized as a basis for income tax nexus, and because nexus for property taxation is not the same as nexus for income taxation, as pointed out above, the latter two cases are not deemed persuasive.

Thus, it is the decision of this court that the facts of this case do not establish sufficient nexus to support the constitutionality of the imposition of the corporation income tax upon the plaintiff for the years in question and, therefore, the attempted imposition of that tax by the commission in this case is contrary to the intent of the statute, which is to tax such corporations to, but not beyond, the limits permitted by the Constitution.

A decree setting aside the commission's order and assessment, in accord with this decision, will be prepared and submitted under Rule 32.*

---

* Foregoing case appealed. Oregon Supreme Court opinion found in 238 Or 340, 395 P2d 127 (1964).