NAKAMOTO, J.
*81 **442 Capital One Auto Finance, Inc. (taxpayer) filed consolidated Oregon corporate excise tax returns as part of a group that included two corporate affiliates. Taxpayer disputed the Department of Revenue's contention that it owed additional taxes and filed an action in the Tax Court. The ultimate issue in this case is whether taxpayer's corporate affiliates, which do not have a physical presence in this state, were subject to either Oregon's corporate excise tax or its corporate income tax for the tax years 2006-2008. Preliminarily, taxpayer also asserts that the department lacked the authority to assert for the first time in the Tax Court that the affiliates were subject to corporate income tax.
Ruling on cross-motions for summary judgment, the Tax Court concluded that the affiliates were subject to the corporate income tax and entered judgment in favor of the department. Capital One Auto Finance, Inc. v. Dept. of Rev. , 22 OTR 326, 2016 WL 7429522 (2016). On taxpayer's appeal, we conclude that the department timely raised the corporate income tax issue and that the corporate affiliates are subject to the corporate income tax based on "income derived from sources within this state." ORS 318.020(1). Accordingly, because there was no genuine issue of material fact for trial and the department was entitled to judgment as a matter of law, we affirm.
I. FACTUAL AND LEGAL BACKGROUND
A. Corporate Tax Structure
Before describing the facts and procedural history, we provide a brief overview of Oregon's corporate tax structure. Oregon has two different-but closely related-tax regimes for multistate corporations: the corporate excise tax and the corporate income tax. In a nutshell, to supplement the corporate excise tax, the corporate income tax was enacted in 1955 in response to a United States Supreme Court case that had determined the constitutionality of state taxation of corporations based on how the tax statutes were drafted. The dual corporate tax regime remains in place today, although the case that provided the impetus and need for enactment of a corporate income tax to supplement the excise tax has since been overruled.
**443 The corporate income tax is found in ORS chapter 318.[1] The relevant statute provides in part:
"(1) There hereby is imposed upon every corporation for each taxable year a tax * * * upon its Oregon taxable income derived from sources within this state * * *.
"(2) Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."
ORS 318.020. During the proceeding before the Tax Court, the department relied on ORS 318.020 to argue that taxpayer's affiliates owed corporate income tax on income derived from sources within Oregon.
The corporate excise tax, found in ORS chapter 317, is not a tax on Oregon income, but a tax on the privilege of doing *82 business in Oregon that is measured by Oregon income.[2] Thus, ORS 317.070 provides:
"Every * * * business corporation and every financial institution doing business within this state * * * shall annually pay to this state, for the privilege of carrying on or doing business by it within this state, an excise tax according to or measured by its Oregon taxable income * * *."
The corporate income tax and the corporate excise tax are not duplicative; they create the same tax liability, but on different bases. See ORS 318.020(1) (creating corporate income tax at same rate as prescribed in ORS chapter 317, and adding that corporate income tax does not apply to "income for which the corporation is subject to the tax imposed by ORS chapter 317 according to or measured by its Oregon taxable income"). In light of the department's assertion of the corporate income tax, as opposed to the corporate **444 excise tax, as a basis for taxpayer's tax liability, we find it helpful to explain the development of and relationship between the two corporate taxes.
Those two tax schemes were enacted at different times. The corporate excise tax was first enacted in Oregon in 1929. Or. Laws 1929, ch. 427. As this court has recognized, in 1951, the United States Supreme Court held in Spector Motor Service v. O'Connor , 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), that a corporate excise tax could not be imposed constitutionally "on the activities of foreign corporations within its boundaries, if such activities were purely interstate." Cal-Roof Wholesale v. Tax Com. , 242 Or. 435, 440-41, 410 P.2d 233 (1966). This court also explained, however, that the same tax, had it been an income tax, would have been constitutional. See id. at 440, 410 P.2d 233 (describing the effect of Spector Motor ). The legislature responded to Spector Motor by enacting the corporate income tax in 1955, adding it to the corporate excise tax so that Oregon could tax income that might otherwise escape state taxation. Cal-Roof Wholesale . 242 Or. at 441, 410 P.2d 233.
The court explained the relationship between the corporate excise tax and corporate income tax:
"[T]he language of the pertinent statutes, the chronology of their enactment, and the judicial decisions extant at the time of their enactment all point to the conclusion that the intention of the legislature was not to enact a corporation income tax law as a separate entity and for a purpose other than that for which it had enacted the corporation excise tax law. Both are revenue producing statutes and the obvious legislative purpose was to create a corporate tax structure which taxed at a uniform rate all corporate income derived from activities within the state in the pursuit of gain. The sole purpose of separately labeling the component parts of this structure as 'income' and 'excise' was to meet the requirements of the Spector case, supra ."
Id. at 444, 410 P.2d 233. This court has since recognized that, "[b]ecause both taxes are within the overall corporate tax structure, they should be construed together." Pacific First Federal v. Dept. of Rev. , 308 Or. 332, 337, 779 P.2d 1033 (1989).
**445 Spector Motor , the impetus for Oregon's corporate income tax, has since been overruled. Complete Auto Transit, Inc. v. Brady , 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed. 2d 326, reh'g den. , 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed. 2d 371 (1977) ; see generally Jerome R. Hellerstein, Walter Hellerstein, and John A. Swain, 1 State Taxation ¶¶ 4.07-4.11, 4-29-4-51 (3d ed. 2000 & Supp. 2014) (discussing complex history of Commerce Clause restrictions on state taxation, and describing Spector Motor as "high-water mark" of recent Commerce Clause cases restricting state taxation). Nevertheless, the framework of a corporate excise tax plus a corporate income tax, though built to address earlier constitutional requirements, remains in effect.
B. Facts and Procedural History
For the purposes of the underlying summary judgment motions, the parties stipulated *83 to almost all the facts. Taxpayer is Capital One Auto Finance, a Texas corporation. Taxpayer provides automobile and motor vehicle financing and is authorized to do business in Oregon; there is no dispute that taxpayer is subject to taxation in this state. Instead, the disputed question was and remains whether taxpayer must include the income of two affiliate corporations in the formula used to calculate the share of income that may be taxed by the State of Oregon.
The two affiliate corporations are Capital One Bank and Capital One FSB (the banks), both located in Virginia.[3] Taxpayer and the banks are related through a parent corporation, and taxpayer filed a consolidated tax return for a group of affiliated companies that included the banks. The banks did not have any property, offices, or employees in Oregon, and they did not apply to the Secretary of State under ORS 60.707 for authority to do business here. The parties have stipulated that the banks' "activities in [offering credit card products, consumer loans, accepting deposit **446 products, and engaging in consumer and small-business lending] were all from [their] offices outside of Oregon."
The banks did, however, make substantial amounts of money from customers in Oregon. The banks provided "consumer finance products"-credit cards, consumer loans, and similar products-to Oregonians; communicated with Oregonians; and collected fees from Oregonians. In 2007 and 2008, the banks sent 24 million solicitations to Oregonians. The banks had 536,000 Oregon customers in 2007, and 495,000 customers in 2008. During those same years, the banks charged Oregonians nearly $150 million in fees each year, including finance charges, late fees, and over-limit fees.
This case involves the 2006, 2007, and 2008 tax years. For each of those years, taxpayer filed a consolidated corporate excise tax return for itself, the banks, and the parent corporation. Because the banks had no physical presence in Oregon, taxpayer concluded that the banks were not subject to Oregon tax. Accordingly, taxpayer did not use income earned by the banks from Oregonians in the formula to calculate the fraction of its income that could be taxed by Oregon.[4]
The department sent taxpayer notices of deficiency for the 2006-08 tax years, based on its conclusion that the banks' Oregon income should have been included as part of taxpayer's Oregon income. The notices of deficiency specifically asserted that taxpayer owed taxes under ORS chapter 317, the corporate excise tax; they did not refer to the corporate income tax of ORS chapter 318. Ultimately, the department assessed roughly $1.5 million in additional taxes for each of the relevant tax years, plus penalties and interest, for a total amount due of $5.7 million.
Disputing the deficiency for each of the tax years, taxpayer filed a complaint in the Tax Court Magistrate **447 Division, but the matter was later referred directly to the Tax Court Regular Division by designation. See ORS 305.501(1) ; TCR 1(C)(2). Taxpayer and the department stipulated to the facts discussed above, then filed cross-motions for partial summary judgment. In its motion for summary judgment, the department renewed its argument that the banks were subject to the corporate excise tax of ORS chapter 317. For the first time, however, it also argued alternatively that the banks were subject to the corporate income tax of ORS chapter 318.
In its motion, taxpayer contended that both the corporate income tax and the corporate excise tax applied only to taxpayers that had a physical presence in the State of Oregon.
*84 The corporate excise tax applies only when a taxpayer is "doing business * * * within this state," ORS 317.070, and taxpayer asserted that that phrase required a taxpayer to be physically conducting business activities in Oregon. As to the corporate income tax, taxpayer contended that the banks did not have any "income derived from sources within this state." ORS 318.020(1). That argument, too, was based on the banks not having any property or physically conducting any activities within this state. In addition, taxpayer asserted that the department was procedurally barred from raising the corporate income tax of ORS chapter 318 as an alternative basis for the tax liability. Because the department had not pleaded ORS chapter 318 in its notices of deficiency, taxpayer maintained, the corporate income tax was not at issue.
The Tax Court granted the department's motion for summary judgment and denied taxpayer's motion. Capital One , 22 OTR at 346. In a lengthy opinion, the court concluded that the corporate income tax applied. Procedurally, the court explained, the department was permitted to raise the corporate income tax under ORS 305.575, 22 OTR at 330-31, a statute that in part states that the Tax Court, upon adequate notice, may determine the amount of a deficiency "even if determined upon grounds other or different from those asserted by the department." Substantively, the court held that the banks "were, under any definition, earning income from 'sources within the state' for purposes of **448 the corporate income tax." Id. at 336. The court rejected taxpayer's contention that the corporate income tax requires an in-state physical presence, concluding that the corporate income tax reaches to the full extent of Oregon's authority to tax under the federal constitution, and that the federal constitution does not require a taxpayer's physical presence within the state for that sort of tax. Id. at 333-34, 336-46.
Although the Tax Court had only granted partial summary judgment, taxpayer later moved to dismiss its remaining grounds for relief. Accordingly, the Tax Court entered a general judgment on behalf of the department.
II. DISCUSSION
A. Legal Standards
This case is before us on the Tax Court's grant of partial summary judgment. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party (here, the department) is entitled to summary judgment as a matter of law. See TCR 47 C (standard for granting summary judgment); Tektronix, Inc. v. Dept. of Rev. , 354 Or. 531, 533, 316 P.3d 276 (2013) (applying that standard on appeal from Tax Court decision). There are no disputed issues of fact; accordingly, we review legal questions for errors of law. ORS 305.445.
On appeal, taxpayer presents three issues to this court. Two of the three issues involve the corporate income tax: whether the department raised it timely, and if so, whether it applies to the banks on the undisputed facts. The third issue involves whether the corporate excise tax would apply to the banks on the undisputed facts. As we will explain, we conclude that the corporate income tax issue was timely raised and that it applies to the banks. Because the corporate income tax results in the same tax liability as would the corporate excise tax, we need not decide whether the corporate excise tax applies here.
The legal issues concerning the corporate income tax involve statutory construction. In interpreting statutes, we focus on the text in context, giving such additional weight to any legislative history as is appropriate. See State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
**449 B. Timeliness of Department's Assertion of Corporate Income Tax
We begin first with taxpayer's argument that the department cannot rely on the corporate income tax as a basis for taxpayer's tax liability. The department did not assert that the banks were subject to the corporate income tax in its deficiency notices and did not raise the issue until it filed its cross-motion for partial summary judgment. Taxpayer contends that that is not timely, and so the Tax Court could not properly *85 consider whether the banks were subject to the corporate income tax.
The Tax Court concluded that the department did timely raise the corporate income tax. In so holding, it relied on ORS 305.575. That statute provides, in part:
"In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency, even if the amount so determined is greater or less than the amount of the assessment determined by the Department of Revenue, and even if determined upon grounds other or different from those asserted by the department , provided that claim for such additional tax on other or different grounds is asserted by the department before or at the hearing or any rehearing of the case before the tax court. In the event such other or different grounds are asserted by the department, the opposing party shall be allowed additional time, not less than 10 days, within which to amend or otherwise plead thereto, which additional time, however, may be waived by stipulation of the parties."
(Emphasis added.) The Tax Court concluded that the corporate income tax argument was "grounds other or different from those asserted by the department" and that the department had raised it "before or at the hearing * * * of the case before the tax court." See 22 OTR at 330-31. The court also found that taxpayer had not sought any additional time to respond. See 22 OTR at 331.
Taxpayer contends that the Tax Court's discussion of the text of ORS 305.575 failed to give appropriate weight to the statutory context. It notes that ORS 305.265 prescribes that any notice of deficiency must identify specifically the **450 statutory basis for the claimed deficiency. The text of that statute provides, in part:
"(2) * * * Except as provided in subsection (3) of this section, the notice [of deficiency] shall:
"(a) State the reason for each adjustment;
"(b) Give a reference to the statute, regulation or department ruling upon which the adjustment is based; and
"(c) Be certified by the department that the adjustments are made in good faith and not for the purpose of extending the period of assessment."
Any notice of deficiency failing to meet the requirements of ORS 305.265 is invalid. See Preble v. Dept. of Rev. , 331 Or. 320, 325, 14 P.3d 613 (2000) ("a notice of deficiency is invalid if it does not include the reason or the authority for each adjustment" as required by ORS 305.265(2)(a) and (b) ). For that reason, taxpayer asserts, the department cannot assert any new grounds for taxation that it did not include in its notice of deficiency. In taxpayer's view, ORS 305.575 allows the Tax Court to correct only the amount of tax, not to impose a different tax.
We are not persuaded by taxpayer's argument based on ORS 305.265. That statute lists the minimum contents required for a valid notice of deficiency. Taxpayer does not assert that the notices of deficiency issued here lacked any element required by ORS 305.265(2). Indeed, they all stated a reason for the adjustment, a reference to the authority for the adjustment, and a certification of good faith. Accordingly, the notices of deficiency were not invalid.
Moreover, ORS 305.265 does not purport to control what happens later during litigation over the deficiency. The process of reducing a deficiency to a judgment is expressly addressed in ORS 305.575. That statute specifically authorizes the Tax Court to impose the correct amount of the tax, "even if determined upon grounds other or different from those asserted by the department," provided that there is adequate notice and opportunity to respond. Notably, ORS 305.575 expressly mentions ORS 305.265, and both ORS 305.265 and ORS 305.575 were created in the same act, **451 Or. Laws 1977, ch. 870, §§ 3, 21. Thus, it appears that the legislature directly contemplated the underlying notice of deficiency when it authorized a tax in the correct amount "upon grounds other or different from those asserted by the department."
Taxpayer's argument appears to leave no content to the phrase "grounds other or different from those asserted by the department."
*86 It would effectively strike the words out of ORS 305.575, a result that is generally prohibited. See State v. Cloutier , 351 Or. 68, 98, 261 P.3d 1234 (2011) ("if possible, we give a statute with multiple parts a construction that will give effect to all of those parts" (internal quotation marks and citation omitted)); accord Crystal Communications, Inc. v. Dept. of Rev. , 353 Or. 300, 311, 297 P.3d 1256 (2013) ("As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions."). We conclude that the department could raise the corporate income tax issue before the Tax Court, even though the notices of deficiency had only asserted the corporate excise tax.[5]
C. Corporate Income Tax: Text and Context
We turn then to the substantive question: whether the banks were subject to taxation under Oregon's corporate income tax. The text of the relevant statutory provision states:
"(1) There hereby is imposed upon every corporation for each taxable year a tax at the rate provided in ORS 317.061 upon its Oregon taxable income derived from sources within this state, other than income for which the corporation is subject to the tax imposed by ORS chapter 317 according to or measured by its Oregon taxable income.
"(2) Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."
ORS 318.020.
**452 The question that taxpayer presents is whether the banks have "income derived from sources within this state" under ORS 318.020(1).[6] Taxpayer has stipulated that the banks charged Oregonians almost $150 million in fees for each of tax years at issue, and it does not dispute that those fees qualify as "income" within the meaning of the corporate income tax. As for whether that income was "derived from sources within this state," taxpayer does not propose that any of those words has a technical legal meaning; thus, we generally give those terms their ordinary meaning. See, e.g. , PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993) ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning.").
We see no need to belabor the ordinary meaning of the phrase. A "source" can be an "individual, company, or corporation initiating a payment." Webster's New Int'l Dictionary 2405 (2d ed. unabridged 1961). If customers located in Oregon are paying money to a taxpayer, then taxpayer would appear to have "income derived from sources within this state," within the ordinary sense of those words.
Taxpayer argues, however, that the statutory context shows that the meaning of the phrase is actually much narrower. The legislature provided a list of three examples of what constitutes "income from sources within this state" in ORS 318.020(2) :[7] income from property located here, income from property with a situs here, and income from activities here. Taxpayer correctly recognizes that the examples in ORS 318.020(2) are not exclusive, because of the connotation of the term "includes," and asserts that our understanding of "income derived from sources within this **453 state" should be informed by what it considers the "common characteristic" of all the examples. Specifically, taxpayer contends that "each [example] involves income derived from the taxpayer's physical presence in the *87 state." (Emphasis in original.) Thus, taxpayer asserts, we should conclude that "income derived from sources within this state" requires a taxpayer to have a physical presence in Oregon.
We agree with taxpayer that the examples in subsection (2) are context for understanding the meaning of the phrase "income derived from sources within this state." "We often apply the interpretive rule noscitur a sociis ('it is known by its associates') to help us determine the meaning of a word or phrase by considering other words in the same sentence or provision." Bates v. Bankers Life and Casualty Co. , 362 Or. 337, 346, 408 P.3d 1081 (2018) (citation omitted). In Daniel N. Gordon, PC v. Rosenblum , 361 Or. 352, 393 P.3d 1122 (2017), we explained that noscitur a sociis was the relevant rule for interpreting a word or phrase when the legislature had provided a nonexclusive list of examples: "[T]he maxim noscitur a sociis reminds us that the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision." Id. at 365, 393 P.3d 1122 (internal quotation marks and citation omitted). In accordance with that interpretive rule, we ask whether the examples share a "common characteristic." See State v. Kurtz , 350 Or. 65, 76, 249 P.3d 1271 (2011) (internal quotation marks, citation, and emphasis omitted).
However, we do not find in the examples set out in ORS 318.020(2) the common characteristic that taxpayer asserts. What is common to all the examples-"income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state"-is that the source of the income -the property or the activities-are in this state. The examples imply only the taxpayer's existence as recipient of the income, and they say nothing about where the taxpayer must be located. The common characteristic that we find thus accords with the ordinary meaning of the text: there must be income from "sources within this state," and the taxpayer must receive that income. Nothing about the statutory text or context **454 suggests that the taxpayer must also have some physical presence here.[8]
III. CONCLUSION
In summary, although the department's notices of deficiency for the 2006, 2007, and 2008 tax years stated that the only source of the tax liability was the corporate excise tax, the department timely raised the corporate income tax before the Tax Court. ORS 305.575. That court thus did not err in considering whether the corporate income tax applied. As for the substantive question presented to the Tax Court regarding the corporate income tax, we agree with the Tax Court that the banks had "income derived from sources within this state." ORS 318.020(1). Accordingly, the Tax Court correctly concluded that taxpayer is subject to assessment for income earned by the banks from its Oregon customers.
Given our conclusion that the banks were subject to the corporate income tax, we need not reach taxpayer's argument that the banks are not subject to the corporate excise tax. See ORS 318.020(1) (corporate income tax imposes same tax liability as would corporate excise tax). We also do not consider whether the corporate income tax, as applied here, is constitutional, because taxpayer does not renew that issue before us, and, as a result, we do not address the Tax Court's suggestion that the corporate income tax reaches the full extent of the state's constitutional power to tax. See 22 OTR at 333-34.
The judgment of the Tax Court is affirmed.

The Tax Court used the 2009 tax statutes in its opinion, see 22 OTR at 327 n. 2 (explaining why), and the parties do not contest that that was the appropriate version. Accordingly, all references in this opinion to the tax statutes at issue are to the 2009 version.

See Pacific First Federal v. Dept. of Rev. , 308 Or. 332, 337-38, 779 P.2d 1033 (1989) (distinguishing corporate excise tax from corporate income tax on that basis). See also Cal-Roof Wholesale v. Tax Com. , 242 Or. 435, 445, 410 P.2d 233 (1966) ("In tax parlance a corporation tax 'measured by income' is an excise tax; a tax 'based upon income' is an income tax.").

Capital One Bank was state chartered until 2008, when it became a nationally chartered bank renamed Capital One Bank (USA), N.A. Capital One FSB merged into another subsidiary in 2007. The parties do not suggest that those changes are relevant to any issue before us. For simplicity, we will refer to the banks as if they had continued their corporate existence and identity without change.

The fraction of a taxpayer's business income that can be taxed by Oregon is generally determined by the fraction of the taxpayer's multistate "sales" that occur in this state. See Powerex Corp. v. Dept. of Rev. , 357 Or. 40, 42-43, 346 P.3d 476 (2015) (discussing Oregon's version of the Uniform Division of Income for Tax Purposes Act, ORS 314.605 to 314.675 ). For purposes of this opinion, neither the details of that formula nor the result of the calculations are otherwise relevant.

The parties did not offer any legislative history concerning enactment of ORS 305.575, and we were unable to find legislative history of value to the statutory construction question presented.

As we mentioned, the parties stipulated that the banks' "activities * * * were all from [their] offices outside of Oregon." In view of our holding, we need not determine the legal effect of that stipulation. Thus, we leave undecided the issue of whether an out-of-state taxpayer's dealings with Oregon customers may constitute "activities carried on in this state" as used in ORS 318.020(2).

There is a difference in terminology between ORS 318.020(1) ("income derived from sources within this state") and ORS 318.020(2) ("income from sources within this state"). In context, however, we believe the legislature intended those phrases to be substantively identical.

We have also reviewed what legislative history remains for ORS 318.020. That statute was originally enacted in 1955 by House Bill 238. Or. Laws 1955, ch. 334, § 2. Much of the history of that bill is now lost: only one exhibit is available, and no meaningful summaries of the discussions in the legislature are available. Moreover, what little remains does not directly bear on the issue before us.