IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporation Excise/Income Tax

| | | |
|---|---|---|
| NBCUNIVERSAL ENTERPRISE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 170037R (Control) |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | |
| ‎⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| NBC UNIVERSAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 170278R |
| v. | ) | |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| DEPARTMENT OF REVENUE, | ) | **MOTION FOR PARTIAL SUMMARY** |
| State of Oregon, | ) | **JUDGMENT AND DENYING** |
| | ) | **PLAINTIFFS' MOTION FOR PARTIAL** |
| Defendant. | ) | **SUMMARY JUDGMENT (NEXUS)** |

These cross motions for partial summary judgment concern whether Plaintiffs had

substantial nexus with Oregon during the relevant tax years, subjecting them to taxation in

Oregon, and whether the state's interstate broadcaster formula fairly represented Plaintiffs'

business activities. For the reasons explained below, the court finds that Plaintiffs had

substantial nexus with Oregon during the tax periods at issue giving rise to tax liability in this

state.

/ / /

/ / /

/ / /

/ / /

ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT
TC-MD 170037R (Control)                                                                      1

The court also finds that Plaintiffs have failed to meet their burden of proof that the interstate broadcaster formula unfairly apportions income relative to their business activities in Oregon.[1]

Plaintiff NBC Universal, Inc. (NBC Universal) appealed for the 2006 to 2010 tax years; Plaintiff NBCUniversal Enterprise, Inc (NBCU Enterprise) appealed for the 2011 to 2013 tax years. However, during the oral argument for these cross motions, NBCU Enterprise conceded the substantial nexus issue for the 2011 to 2013 tax years.[2] Accordingly, the court's references to Plaintiff during its substantial nexus analysis refers solely to NBC Universal.

This order first analyzes Oregon's substantial nexus rules for the years at issue and Plaintiff's economic and virtual connections to Oregon under state law. Second, the court addresses Plaintiff's federal constitutional claims under the Due Process Clause and Commerce Clause. Third, the court considers whether Oregon's interstate broadcaster formula represents an unfair apportionment of taxable income relative to Plaintiffs' Oregon business activities.

## I. STATEMENT OF FACTS

During the tax years at issue, Plaintiff "owned and operated a portfolio of news and entertainment television networks, a motion picture company, television production operations, a television stations group, and theme parks." (Ptfs' Mem at 2.) Plaintiff created programming content, comprised of shows and advertisements packaged together, which it provided to affiliate

---

[1] The court acknowledges that while these cross motions for partial summary judgment were under advisement, the Regular Division of the court determined that Oregon's interstate broadcaster apportionment methodology must be applied separately for each affiliate joining in a consolidated Oregon return. *ABC Inc. and Combined Affiliates v. Dept. of Rev.,* TC 5431, 2024 WL 2146943 (Or Tax, May 14, 2024). While the court in this case has already determined in its August 17, 2022, order that "Plaintiffs are interstate broadcasters with an Oregon audience," a determination will likely be required as to which specific members of Plaintiffs' affiliated group engaged in interstate broadcasting.

[2] Plaintiffs' counsel clarified that this concession stems from Comcast's acquisition of a controlling interest in NBC Universal, Inc. in January 2011 that resulted in structural changes to the entities, including transfer of Comcast's broadcast networks to those newly created NBC entities.

stations nationwide, including in Oregon. Plaintiff provided its broadcasts in exchange for airtime, synergistic branding, and deductions of stations' payment obligations owed to Plaintiff under separate agreements. (*See, e.g.*, Confidential Exhibits Ptfs' Mot Part Summ J and Points and Auth Supp Ptfs' Mot Part Summ J, Ex 4 at 1-4.) Plaintiff had no offices, employees, or physical property in Oregon and did not own or operate local broadcast television stations in this state. (Ptfs' Mem Supp Summ J at 6.)

Under contracts with seven affiliate stations in Oregon,[3] Plaintiff provided programming and branding support. Specifically, the affiliate stations agreed to have Plaintiff "brand [the affiliate station] as an 'NBC Station' in [the] Station's market through cooperative efforts in areas such as on-air promotion, unified graphic design, use of the NBC peacock logo and NBC identification * * *." (Decl of Harbur, Ex B at 8, 25, 43.) These efforts were designed "to cause [the local affiliate station] to be identified, in the perception of television viewers, as an 'NBC Station' similar to such viewers' perception of the NBC [owned and operated stations]." (*Id.*) In exchange, Plaintiff received approximately 88 hours of weekly airtime on local stations, subject to contractual requirements. The agreements included adjustments for payments owed under other contracts between the parties, which were significant, but the financial details are confidential. (*E.g.*, *Id.* at 1-5, 12.)

Oregon affiliate stations did not pay Plaintiff directly for licensing, services, or sales related to broadcast television and advertisements. Instead, Plaintiff "record[ed] broadcast [television] * * * advertising sales when advertisements [were] aired, net of provision for any viewer shortfalls (make goods). (Decl of Harbur, Ex A at 80 (2008 Form 10-K annual report).)

---

[3] Plaintiff's affiliates in Oregon during the tax years at issue were KTVZ 21 in Bend, KMCB 23 in Coos Bay, KMTR 16 in Eugene, KOTI 2 in Klamath Falls, KOBI 5 in Medford, KGW 8 in Portland, and KTCW 46 in Roseburg.

Advertisement agencies outside Oregon contracted with businesses wishing to advertise their goods or services in Oregon or as part of nationwide campaigns. The advertisement agencies contracted with Plaintiff to air the advertisements interspersed in its broadcasts because its "Broadcast Television segment serve[s] audiences and advertisers in all 50 states, including the largest U.S. metropolitan areas." (*Id.*, Ex B at 6.) Plaintiff did not select the advertisements or control their targeting.

## II. ANALYSIS

The central issue for these cross-motions for partial summary judgment is whether Plaintiff's licensing of television programming creates a substantial nexus or economic presence in Oregon that justifies state taxation. Plaintiff argues it lacks substantial nexus because it had no physical presence in Oregon and did not directly market to Oregon residents. Defendant counters that Plaintiff's agreements with Oregon affiliates, which generated advertising revenue for Plaintiff, established a substantial economic connection to this state.

The court will grant summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* TCR 47 C; *Tektronix, Inc. v. Dept. of Rev.*, 354 Or 531, 533, 316 P3d 276 (2013). The parties base their arguments on Oregon law found in OAR 150-317.010 (2008), *renumbered* as OAR 150-317-0020 (2016),[4] and on federal constitutional arguments relying on the Due Process Clause and the Commerce Clause.

---

[4] Oregon Administrative Rules (OAR). OAR 150-317.010 (1999) was revised and substantially expanded, effective May 5, 2008. The parties each analyzed nexus under that version of the rule, in effect since 2008. (*See* Ptfs' Mem at Supp Summ J at 10-11; Def's Cross-Mot at 2.) The parties' briefing did not address whether the earlier rule in effect before 2008 results in a different analysis or outcome under the "doing business" definitions and examples. As such, the court considers any such arguments waived and applies the 2008 version of the rule relied upon by the parties.

In accordance with Oregon's "first things first" doctrine,[5] the court will begin by analyzing whether, pursuant to state law, Plaintiff's business activities involve substantial nexus with Oregon during the tax years at issue.

A.    *Substantial Nexus Under Oregon Law*

OAR 150-317.010(1) (2008) provides: "The State of Oregon imposes taxes on or measured by net income to the extent allowed under state statutes, federal Public Law 86-272, and the Oregon and U.S. Constitutions."  OAR 150-317.010 established that Oregon's jurisdiction to impose excise or income taxes on a taxpayer's activities hinges on whether the taxpayer has substantial nexus in the state.  Substantial nexus exists when a taxpayer "regularly takes advantage of Oregon's economy to produce income for the taxpayer and may be established through the significant economic presence in the state."  OAR 150-317.010(2).  To determine this, OAR 150-317.010(3) provides several non-exclusive factors, which include whether the taxpayer:

"(a) maintains continuous and systematic contact with Oregon's economy or market;

"* * * * *

"(d) [r]eceives significant gross receipts attributable to customers in Oregon; [or]

"(e) [r]eceives significant gross receipts attributable to the use of taxpayer's intangible property in Oregon."

In this case, Plaintiff maintained continuous and systematic contact with Oregon's economy by partnering with affiliates under contract to deliver broadcast television programming and advertisements aimed at Oregon viewers.  OAR 150-317.010(3)(a).  Plaintiff

---

[5] Under Oregon's "first things first" doctrine, this court customarily examines the state law claims first before addressing any federal law claims.  *Hughes v. State of Oregon*, 314 Or 1, 12, 838 P2d 1018 (1992), *Capital One Auto Fin. Inc. v. Dept. of Rev.*, 22 OTR 326, 330 (2016), *aff'd*, 363 Or 441, 423 P3d 80 (2018).

maintained agreements with local affiliate stations in Oregon to license its television programming on an ongoing basis following a weekly schedule. (Confidential Exs Ptfs' Mot Part Summ J and Points and Auth Supp Ptfs' Mot Part Summ J, Ex 4 at 1-4.) Plaintiff's agreements with its seven local affiliates in Oregon constituted an integral part of Plaintiff's business serving the entire United States market. Oregon viewers supported Plaintiff's sale of advertisement slots in its broadcasts. The affiliate agreements created a continuous presence of Plaintiff's broadcast television programming in the Oregon market, even in the absence of Plaintiff undertaking physical operations here.

Turning to the next relevant factor, Plaintiff generated significant gross receipts attributable to Oregon viewers through Plaintiff's sales of advertising slots during its programming. OAR 150-317.010(3)(d). While the contracts for advertising were executed out-of-state, the revenue derived from advertising was fundamentally dependent on the Oregon audience as part of Plaintiff's service of broadcasting television to audiences in all 50 states. (Decl of Harbur, Ex B at 6.) Indeed, its sales of advertising airtime is predicated on specific minimum audience numbers. The possibility that Plaintiff's programming might produce fewer than forecasted viewers and less net advertising revenue is referenced in its 2008 Form 10-K annual report: the ultimate revenue from advertising sales are "net of provision for any viewer shortfalls (make goods)." (*Id.*, Ex A at 80.) Plaintiff's gross receipts from its broadcast television business relies on maintaining consistent viewership in Oregon and the 49 other states to have a marketable audience for sales of advertisement timeslots. As acknowledged in the court's prior order on partial summary judgment, the value in broadcasting lies in advertising, not in the sale of content to end users. (Order Granting Def's Mot for Partial Summ J at 7 (Aug 17, 2022).) For those reasons, a portion of Plaintiff's gross receipts from the sale of

advertisements during its broadcasts are attributable to the Oregon audience that consumes Plaintiff's advertisement-supported broadcasts.

The third relevant factor for evaluating Plaintiff's business activities in Oregon stems from its significant gross receipts attributable to the use of its intangible property. OAR 150-317.010(3)(e). The use of Plaintiff's intangible property in Oregon took two forms. The first form is Plaintiff's brandings of the affiliate stations to appear to viewers as NBC stations in the likeness of the local stations Plaintiff owned and operated, through "cooperative efforts in areas such as on-air promotion, unified graphic design, use of the NBC peacock logo and NBC identification * * *." (Decl of Harbur, Ex B at 8, 25, 43.) The second form of Plaintiff's intangible property use for which it received significant gross receipts was the licensing of its programming for broadcast to Oregon viewers under contract with its local affiliates.

Taken together, these factors collectively demonstrate that Plaintiff derived substantial economic benefit from its engagement with Oregon's market. The court concludes that Plaintiff had a substantial nexus with Oregon under OAR 150-317.010 justifying taxation in this state. The court next turns to evaluating Plaintiff's federal constitutional claims under the Due Process Clause and Commerce Clause law.

B.      *Federal Constitutional Nexus Standards*

The court's analysis of the federal nexus standards for state taxation begins with the lower minimum contact requirement to satisfy the Due Process Clause, followed by analysis of the more stringent Commerce Clause standard.

/ / /

/ / /

/ / /

1. *Nexus under the Due Process Clause*

The United States Supreme Court "applies a two-step analysis to decide if a state tax abides by the Due Process Clause."[6] *North Carolina Dept. of Rev. v. The Kimberley Rice Kaestner 1992 Family Trust*, 588 US 262, 269, 139 S Ct 2213, 204 L Ed 2d 621 (2019). The Court requires a "definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. State of Maryland*, 347 US 340, 344–45, 74 S Ct 535, 98 L Ed 744 (1954). The test for a minimum connection looks to "minimum contacts" which "may be satisfied by establishing that the taxed party 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Ooma, Inc. v. Dept. of Rev.*, 369 Or 95, 100, 501 P3d 520 (2021), *cert den*, 142 S Ct 2839 (2022) (quoting *Hanson v. Denckla*, 357 US 235, 253, 78 S Ct 1228, 2 L Ed 2d 1283 (1958)). The minimum connection cannot be "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 US 770, 774, 104 S Ct 1473, 79 L Ed 2d 790 (1984). The connection does not require a physical presence in a state to satisfy due process. *South Dakota v. Wayfair*, 585 US 162, 177, 138 S Ct 2080, 201 L Ed 2d 403 (2018).

Plaintiff's programming agreements with its local affiliate stations, which required continuous and intentional delivery of content to Oregon viewers, demonstrate such a purposeful availment of the Oregon market. Plaintiffs earned substantial revenue from advertisements placed in its broadcasts, which ultimately targeted Oregon residents. These activities collectively satisfy the Due Process Clause's nexus requirement.

---

[6] The second step of the analysis is "the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." *Id.* Plaintiff's briefing did not specifically articulate a challenge under the second step, so the court's analysis is limited to the first step—the required minimum connection between the taxpayer and the state.

Nevertheless, Plaintiff argues that it lacked a minimum connection with Oregon for three reasons: (1) because it had no physical presence within the state; (2) because its activities in Oregon were akin to passively licensing the use of intangible property; and (3) because it did not have direct contacts with customers in Oregon. The court addresses each argument in turn.

a.   Physical presence unnecessary for minimum connection

Plaintiff argues that it lacks a minimum connection to Oregon under the Due Process Clause of the 14th Amendment because it maintained no physical presence within the state. The Oregon Supreme Court has long recognized that a taxpayer need not have physical presence in the state to establish nexus under the Due Process Clause when the taxpayer benefitted from the state's economy due to a purposeful connection to it.[7]

In *American Refrigerator Transit Company v. State Tax Commission,* 238 Or 340, 395 P2d 127 (1964), the taxpayer leased refrigerated railroad cars to railroads, which were used to transport goods through Oregon. *Id*. at 341. Although the taxpayer had no offices, employees, or direct control over use of the railroad cars in Oregon, the court concluded that the cars were essential to the taxpayer's ability to generate income and thus provided a sufficient connection to establish nexus. The court held that the company's property "had a situs in Oregon * * * and that since the cars were used in the exploitation of the market in Oregon from which [taxpayer] derived income through its rental of the cars, there was a sufficient nexus to satisfy the due process requirement of the Fourteenth Amendment." *Id.* at 350.

In arriving at that conclusion, the court stated it did "not regard it as essential to the existence of a nexus that the taxpayer, through its agents, *directly* engage in some form of

---

[7] And recently, the Court stated: "Nothing about the statutory text or context [of the corporate income tax statute] suggests that the taxpayer must also have some physical presence [in Oregon]." *Capital One Auto Finance, Inc v. Dept. of Rev.,* 363 Or 453-454, 423 P3d 80 (2018).

physical activity within the state in furtherance of a business purpose." *Id.* at 346 (emphasis in original).

Plaintiff, like the taxpayer in *American Refrigerator*, derived income through the use of its property–in this case, television programming–within Oregon. Although Plaintiff did not directly broadcast programming or sell advertisements in Oregon, its licensing agreements with local affiliate stations facilitated the delivery of programming and advertising content to Oregon viewers. This model generated substantial advertising revenue, which depended on Oregon's "economic milieu" for its value. *American Refrigerator*, 238 Or at 346 (observing "nexus exists whenever the corporation takes advantage of the economic milieu within the state to realize a profit").

        b.      Substantial income generated from the licensing of intangible property

Plaintiff relies on *In re Washington Mutual, Inc.*, No. 08-12229, 485 BR 510 (Bankr D Del 2012) for the proposition that Plaintiff's licensing of intangible property lacked nexus with Oregon under the Due Process Clause. (Ptfs' Mem at 8-9.) Washington Mutual was a Washington state holding company from which Oregon was attempting to collect taxes, based on a theory of joint and several liability from subsidiaries who did business in Oregon. The decision was predicated on the absence of sufficient nexus between the debtor, Washington Mutual, and Oregon. The court found that Washington Mutual's only connection to Oregon was the use of its intangible property for free and it "received no sales or other operating revenue of any kind from Oregon sources." *Id.* at *3.

By contrast, Plaintiff is not a mere holding company. Plaintiff generated substantial income from the use of its intangible property in Oregon as part of its business model with local affiliates to support its audience for broadcast television. Plaintiff's reliance on *Washington*

*Mutual* is misplaced given Plaintiff's business model of maintaining a network of affiliates to support its national audience for the sale of advertisement timeslots.

c.     Contacts channeled through affiliates by design

Plaintiff seeks to distinguish its circumstances from those found in *Capital One Auto Finance, Inc v. Department of Revenue,* 363 Or 441, 423 P3d 80 (2018), on the basis that that taxpayer's contacts with the state were "far more extensive than exist [in this case]." (Ptfs' Mem at 10.) In *Capital One*, the court found that the significant volume of direct credit card solicitations and income derived from the state created sufficient economic nexus for Capital One to be taxed, despite a lack of physical presence in the state. *Id.* at 446, 454.

Plaintiff essentially asserts that its business model of connecting to the Oregon audience through its contracted affiliates shields Plaintiffs by making the contacts indirect. This once-removed attenuation of contact is not meaningful, as was made clear in *American Refrigerator*: "The fact that [taxpayer's] cars are operated by [taxpayer's] lessees (or their bailees) rather than by [taxpayer's] own agents is not significant." 238 Or at 348. Thus, while *Capital One* involved direct solicitation, the principle extends to cases where a taxpayer benefits economically from the state's market, even through intermediaries. *American Refrigerator*, 238 Or at 348.

Put another way, the independence of affiliate stations does not negate nexus when the affiliates are integral to Plaintiff's operations. The affiliates acted as conduits, delivering Plaintiff's pre-packaged programming and advertisements to Oregon viewers, enabling Plaintiff to derive substantial advertising revenue from the state's market, just as it did across all 50 states. (Decl of Harbur, Ex B at 6.)

Like the credit card solicitations and the resulting income in *Capital One*, Plaintiff's paradigm of providing programming to Oregon affiliates intentionally exploited Oregon's

economic market by leveraging local viewership to create advertising revenue, notwithstanding Plaintiff's lack of a physical presence in Oregon. *Capital One*, 363 Or at 453-454.

2.      *Substantial nexus under the Commerce Clause*

Substantial nexus under the Commerce Clause requires a higher threshold than the Due Process Clause. *Quill Corp. v North Dakota*, 504 US 298, 315 fn 8, 112 S Ct 1904, 119 L Ed 2d 91 (1992). This is satisfied if the taxpayer derives significant income through intentional and continuous engagement with the state's market, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit v. Brady*, 430 US 274, 279, 97 S Ct 1076, 51 L Ed 2d 326 (1977). The U.S. Supreme Court's decision in *Wayfair* clarified that substantial nexus can be established through "economic and virtual contacts." 585 US at 188. Put another way, "'[s]uch a nexus is established when the taxpayer avails itself of the substantial privilege of carrying on business in the jurisdictions.'" *Ooma*, 369 Or at 107 (quoting *Wayfair*, 585 US at 188). This court has interpreted the standard of whether a taxpayer has availed itself of the substantial privilege of carrying on business in this state as necessarily "impl[ying] intentionality and continuity" on the part of the taxpayer. *Global Hookah Distributors, Inc. v. Dept of Rev.*, 24 OTR 562, 597 (2021). In the present case, Plaintiff's contracts with Oregon affiliates created a substantial virtual presence by ensuring its programming and advertising content was broadcast following a consistent weekly schedule to Oregon viewers, which generated significant advertising revenue. The contracts with Oregon affiliates amount to intentional and continuous engagement with the state's market. With these threshold factors met, Plaintiff's activities have sufficient nexus to be taxed in Oregon under the Commerce Clause.

/ / /

Plaintiff attempts to distinguish *Ooma* by arguing that taxpayer's contacts with Oregon in that case was "far more extensive than exist [in this case]." (Ptfs' Mem at 10.) Ooma Inc. directly solicited and contracted with Oregon residents for internet telephone services despite having no physical presence in this state. In *Ooma*, the court again affirmed that physical presence is not required for a court to find substantial nexus under the Commerce Clause, so long as the entity purposely avails itself of the Oregon market. 369 Or at 108-109. Plaintiff's scant briefing on this subject amounts to a single conclusory sentence that it "did not purposefully avail itself of the Oregon market." (Ptfs' Mem at 15.) Plaintiff's conspicuous minimization of its vast affiliate network notwithstanding, modern commerce—particularly in businesses involving intangible property—often operates through intermediaries. The relevant inquiry is not the presence or absence of direct customer contact but whether the taxpayer's activities establish intentional and continuous economic connection to this state.

The Oregon Supreme Court characterized a similar argument from Ooma Inc. as trying to assert that "a court may not conclude that an out-of-state company satisfies the substantial nexus requirement without finding that the company maintains an 'extensive virtual presence.'" *Ooma*, 369 Or at 109-110. The court rejected any requirement exists to make such a finding and instead observed that a company that earned "far greater revenue and engaged in far more transactions than involved in *Wayfair* must be deemed to have also availed itself of the substantial privilege of carrying on business in Oregon." *Id.* Here, Plaintiff's relationships with its Oregon affiliates demonstrate its intentionality and continuity in accessing the Oregon audience. Plaintiff received significant advertising revenue attributable to Oregon viewership. Taken together, those facts establish Plaintiff's substantial nexus with Oregon under the Commerce Clause.

/ / /

D.      *Apportionment of Income Under the Interstate Broadcaster Formula*

Having determined that substantial nexus exists to tax Plaintiff's broadcast activities in Oregon, the court turns to Plaintiff's unfair apportionment challenge. The court has already ruled in this case that Plaintiffs are property characterized as interstate broadcasters. (Order Granting Def's Mot for Partial Summ J and Denying Pfts' Mot for Partial Summ J, (Aug 22, 2022).) Plaintiff asserts that the tax is unfairly apportioned because it should be zero (due to the lack of nexus). The court uses the four-part test articulated in *Complete Auto* which requires consideration of whether the tax satisfies the requirements of substantial nexus, fair apportionment, nondiscrimination, and fair relation to the benefits provided by the state. *Microsoft Corporation v Dept. of Rev.*, __ OTR __, 2024 WL 4249267 (Or Tax, Aug 29, 2024). This court has already found substantial nexus existed for Plaintiffs to be taxed; Plaintiffs' motion only challenges the fair apportionment element which requires consideration of the internal consistency and external consistency tests.

The apportionment formula employed by Oregon under ORS 314.680 to ORS 314.690 adheres to constitutional principles ensuring fair apportionment and non-discrimination against interstate commerce.[8] These provisions specifically use an audience-based apportionment methodology, reflecting the economic reality of the broadcasting industry.

1.      *Internal consistency*

The audience factor apportions income based on the proportion of an interstate broadcaster's audience located within Oregon. ORS 314.684. If every state adopted a similar formula, no double taxation would result because the audience-based calculation ensures each

---

[8] References to the Oregon Revised Statutes (ORS) are to the 2005 version. The text of ORS 314.680 to 314.690 remained unchanged until amended in 2014.

state's tax is confined to income attributable to its own residents. For Plaintiff, advertising revenue from Oregon viewership is the product of the economic activity within this state—the broadcasting of Plaintiff's programing. By focusing solely on the Oregon audience, the state isolates Plaintiffs' tax base from revenues attributable to viewers in other states, thereby meeting the internal consistency test.

2.    *External consistency*

The broadcaster apportionment formula reflects income reasonably associated with Plaintiffs' business activities in Oregon. As nexus is established by the significant economic activity within this state—by agreements with local affiliates to transmit programming to an Oregon audience—gross receipts attributable to Oregon viewers appropriately represent the share of Plaintiffs' income generated within this state. The calculation ensures the tax does not overreach or negatively impact interstate commerce.

It is Plaintiffs' burden of proof to show that the interstate broadcaster statute is unfair as to their activities. Plaintiffs' motion does not clearly demonstrate that ORS 314.680 to ORS 314.690 created unfair apportionment in this case.

III.  CONCLUSION

The court concludes that Plaintiffs' business activities created a substantial nexus with Oregon under both state and federal law. Plaintiffs have not met their burden of proof that the apportionment formula unfairly represents their activities in Oregon. Now, therefore,

/ / /

/ / /

/ / /

/ / /

IT IS ORDERED Plaintiffs' Motion for Partial Summary Judgment is denied and

Defendant's Cross-Motion for Partial Summary Judgment is granted.


_____
RICHARD D. DAVIS
MAGISTRATE

*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was signed by Magistrate Richard D. Davis and entered on March 25, 2025.*